J. JONES, Chief Justice,
dissenting.
I respectfully dissent from the opinion of the Court because (1) the Industrial Commission relied in its decision upon Idaho Code section 72-439, apparently being unaware that it does not apply in this case, and (2) I believe the opinion fails to properly distinguish risk from causation and interprets Idaho Code section 72-438(12) in a manner' inconsistent with its language and purpose. The result is that firefighters facing diagnoses similar to Aikele’s will be precluded from recovery and this statutory provision will be effectively rendered useless.
In setting forth the applicable law, the Commission stated:
Under Idaho Code § 72-439, an employer cannot be held liable for an occupational disease unless such disease is actually “incurred” in that employment. Therefore, as an accident/injury case, one who claims benefits for an occupational disease must show that he developed a disease while performing the work he was employed to perform and that there is a causal connection between the conditions under which the work was performed and the resulting disease.
However, Idaho Code section 72-438 specifically provides that “the diseases enumerated in subsection (12) of this section pertaining to paid firemen shall not be subject to the limitations prescribed in section 72-439, Idaho Code.” (emphasis added). The require *915 ment that a claimant prove his or her disease was “actually incurred” in the employment is inapplicable where the occupational disease claimed is a “[ejardiovascular or pulmonary or respiratory disease[] of a paid fireman ... caused by ... proximate exposure or by cumulative exposure over a period of four (4) years or more to heat, smoke, chemical fumes or other toxic gases.” I.C. § 72-438(12). The Legislature’s exclusion of subsection (12) from the usual mandates of section 72-439 was not discussed or even mentioned by the Industrial Commission in its decision. I would send the case back to the Commission for reconsideration, based upon the statutes enacted by the Legislature.
Failing a remand of the case for consideration under the applicable law, I disagree with the Court’s analysis. The Court’s opinion accepts that in the absence of any method to pinpoint a cancer’s cause, a risk analysis suffices. However, risk is a wholly distinct concept from causation. Risk is defined as “[t]he uncertainty of a result” or “the chance of injury, damage, or loss,” particularly as it concerns “the existence and extent of the possibility of harm.” Blacií’s Law DICTIONARY 1442 (9th ed. 2009). A cause, however, is “[sjomething that produces an effect or result.” Id. at 250. Thus, risk is essentially the uncertain possibility that something might occur; a cause is the reason why it actually did. Results do not always follow risks, but every result does have a cause, even when risk analysis deems that result unlikely.
Counsel for ISIF argued before the Commission and this Court that risk based upon a meta-analysis is causation. This is incorrect. For example, studies likely show that if I drive on an icy, snowy highway, I am at an increased risk of being involved in a collision with another vehicle or sliding off the road. In other words, there is a chance my car may slide on the ice. However, if I hit a deer on the same snowy, icy highway, then that deer is the actual cause of my accident and the possibility that I could have slid off the road instead is irrelevant. The risk analysis had nothing to do with the deer and does not negate -the .result, even though it failed to predict it. By the same token, the meta-analysis’ conclusion that Aikele’s job did not increase his lung cancer risk has nothing whatsoever to do with, nor any effect on, his cancer’s actual cause.
Of course, it is undisputed, like many diseases, that no one knows any cancer’s specific cause. Dr. Zuckerman said, “[i]n an individual patient we never know precisely what caused the cancer.” Similarly, Dr. Dickson testified that “[one] hundred percent certainty in oncology is neartly] impossible to have,” and explained that.even among smokers with lung cancer, “there is no way of knowing for sure if the smoking caused that lung tumor” other than the “strong association” revealed through the “body of information that has been obtained over many, many years.” Even then, oncology’s inherent uncertainty all but proves the old adage, “correlation is not causation.” Thus, even if the meta-analysis reached the opposite conclusion and found that firefighting was associated with an increased risk of lung cancer, it still would not indicate whether Aikele’s cancer resulted from his occupation. Consequently, the meta-analysis cannot answer this ease’s central question.
Although science cannot yet pinpoint the cause for one person’s cancer, it does know a few things about most people’s cancers. For instance, Dr. Zuckerman testified that 85% of lung cancer is attributable to environmental factors. Therefore, only ten to fifteen percent of lung cancers occur without exposure to carcinogens. Accordingly, nearly all cancers more likely than not result from some type of environmental exposure. If the general population’s most significant environmental factor is smoking, but the patient does not smoke, and genetic predisposition is ruled out, the remaining culprits are other environmental factors or bad luck. Although bad luck cannot be ruled out, Dr. Zuckerman’s opinion indicates that it is relatively rare. Consequently, it is more likely than not that any nonsmoker’s lung cancer resulted from environmental factors.
Other environmental factors that commonly correlate with lung cancer include air pollution and automobile exhaust. Dr. Dickson testified that the air pollution in southeast Idaho is unlikely significant enough to have contributed to Aikele’s illness. However, as a *916 career firefighter, Aikele “had extensive exposure to occupational smoke including fires.” Even without precise details regarding what chemicals Aikele was exposed to, smoke from structure and grass fires is clearly Aik-ele’s most significant environmental risk factor. If environmental factors are the most plausible explanation for Aikele’s cancer and his greatest environmental exposure arose from his work, then Aikele has shown that it is more likely than not that his firefighting career caused his illness, and thus met his burden of proof.
Idaho Code section 72-438(12)’s language indicates that the Legislature intended to account for these realities. That statute lists several occupational diseases, including “Cardiovascular or pulmonary or respiratory diseases of a paid fireman ... caused by ... proximate exposure or by cumulative exposure over a period of four (4) years or more to heat, smoke, chemical fumes or other toxic gases arising directly out of, and in the course of, his employment.” I.C. § 72-438(12). Under this text, the claimant must provide evidence that while working as a firefighter, he experienced “cumulative exposure ... to heat, smoke, chemical fumes or other toxic gases” for at least four years. Common sense indicates that firefighters working with active fire scenes and their immediate aftermath are necessarily exposed to a multitude of chemicals and gases. However, the statute provides no guidance as to what substances, or in what amounts, are sufficient to recover or attribute causation to those exposures. Similarly, there is also no measurement suggested for what rises to “cumulative exposure” other than it must have occurred over four years.
Furthermore, when the entire section is read in context, section 72-438(12) notably differs from the other occupational disease subsections, which list specific diseases, contracted from specific chemicals, in (often unspecified) occupations that require such contact. See I.C. § 72-438(l)-(ll). In contrast, subsection (12) covers a specific occupation, and where the other sections require exposure to certain substances, it substitutes the less-definitive prerequisite “cumulative exposure ... to heat, smoke, chemical fumes or other toxic gases.” This lack of specificity indicates that the Legislature intended that firefighters suffering from cardiovascular, respiratory, or pulmonary diseases should not be subjected to the same burden of proof as claimants with diseases with more specific, traceable origins. Additionally, it accounts for the reality that no firefighter can record and recount the substances he encountered over many years during emergency situations, often involving substantial destruction that make identifying those substances impossible.
Accordingly, Idaho Code section 72-438(12) required that Aikele show: (1) he was a paid fireman for the City of Blackfoot; (2) he suffered from a cardiovascular, pulmonary, or respiratory disease; (3) he experienced at least four years’ worth of cumulative exposure to “heat, smoke, chemical fumes or other toxic gases”; and (4) such exposure arose “directly out of, and in the course of, his employment.” I.C. § 72-438(12). It is undisputed that Aikele died from lung cancer, a pulmonary disease, and was a City of Blackfoot firefighter for over twenty years. Additionally, Dr. Dickson testified that Aikele encountered various burning and smoldering substances during his over twenty years of service. Common sense compels the conclusion that these sites and substances featured smoke, chemical fumes, and/or other toxic gases. Although Dr. Dickson could not produce a list of these substances or their amounts, the statute does not require this data. Aikele was able to demonstrate each fact that the statute requires and, therefore, he met the bar for recovery. His situation is precisely what this statute was written for.
It is obvious to me that the Legislature intended to protect firefighters suffering from certain classes of ailments that elude typical models of causation. To accomplish this, it relaxed the standards applied to other diseases in order to prevent erecting barriers to recovery. Idaho Code section 72-438(12) embraces the fact that the overwhelming majority of lung cancers are attributable to environmental factors, as well as the near impossibility of proving their exact cause. To hold otherwise implants requirements into the provision that it plainly does not contain *917 and writes the possibility of recovery for firefighters in Aikele’s situation out of the occupational disease statute entirely. For these reasons, I must respectfully dissent from the opinion of the Court.
Justice W. JONES concurs.